**Catrillo Law Firm**
B. T. Catrillo
1320 n. Bryant Ave.
Tucson, Arizona 85712
Tel: (520) 904-3759
SB# 016419, PC# 65136
barbra.catrillo@gmail.com

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| **The United States of America,**<br>         Plaintiff,<br>   vs.<br>**Isaias Delgado**<br>         Defendant. | CR 19-01094-JGZ-JR-1<br><br>**Defendant's Sentencing Memorandum** |

   COMES NOW Defendant, Isaias Delgado, by and through counsel undersigned, with the Defendant's memorandum to assist this court at his sentencing hearing.

**FACTS AND PROCEDURAL HISTORY**

   Isaias Delgado was arrested on April 4, 2019, for selling guns without a federal firearms license (FFL). He was indicted and charged in a four count indictment.

   Count 1 alleged "Engaging in the Business of Dealing Firearms without a License". 18 U.S.C §922(a)(1)(A) and §924(a)(1)(D). Counts 2 through 4 alleged False Statements in Record of Federal Forearms License.  The government made the decision to dismiss the Counts 2 through 4, Making False Statements in Record of Federal Firearms Licensees days before trial began. Mr. Delgado fervently believed he could convince the jury that he did not lie about his residence on the federal firearms purchasing form. To that end, he hired an expert witness to prove through the tracking of his cell phone usage, that he was in the United States and at the location of his mother's home a good block of each week.

This case is the first in which Mr. Delgado has ever been criminally charged. On the date of his arrest, he was picking up guns that he believed he was permitted to purchase. Mr. Delgado was not an individual who shopped at gun shows or tried to get around background checks by using the gun show loophole in the law. At the time of his arrest, he had a bedroom at his mother's house where he stayed. He had a girlfriend in Mexico. He traveled to see her and would stay with her usually three or four days out of the week, in that country. He subsequently married her and is trying to get her and their daughter permission to come and reside in the United States.

Unlike other targets of ATF, and for reasons unknown, Mr. Delgado was never personally approached by an ATF agent to apprise him that they believed he needed a federal firearms license (FFL) to purchase guns, based upon history that they were tracking. In the only two other cases the undersigned is aware of involving the alleged need for a FFL, ATF in coordination, with the United States Attorney's Office, has the opted to give a written warning to those individuals. That courtesy was not extended to Mr. Delgado.

Mr. Delgado does not recall trial counsel discussing, at any point, pleading straight up to the court in this case-especially once the "false statement" charges were dropped.

Mr. Delgado was offered a plea in this case that required him pleading to a trafficking enhancement. That, he was not in a position to do.

**THE PSR RECOMMENDATIONS AND ENHANCEMENT**

Finding a guideline provision of 21 to 27 months (which was objected to) the Probation Department has recommended the low end of that range, 21 months of incarceration. They cite Mr. Delgado's lack of criminal history, family support and his employment as justification for that lowest range and that such punishment would be sufficient, but not greater than necessary, to conform with the statutory purposes of sentencing. They also evidently have concluded that he is financially able to be assessed a $15,000 fine.

The Probation Department has alleged that a plus 4 enhancement for amount of weapons in this case is applicable. They evidently based that on the guns the court has ordered forfeited in this case.

Mr. Delgado has objected to that enhancement, arguing that if an enhancement is proper at all, it should be no more than a plus 2 enhancement which tracked with evidence presented to the jury from his statement to Agents.

**THE ENHANCEMENTS SOUGHT BY THE GOVERNMENT SHOULD BE REJECTED.**
**TRAFFICKING:**

The government argues that a trafficking allegation should apply in this case. The government has not presented evidence at the trial or in any information presented thereafter that would meet its burden of proving that allegation by a preponderance of evidence.

The government opted not to go forward with charging Mr. Delgado with trafficking. The government knew that it did not have sufficient evidence to do so in a jury trial. The government has selected to use the mechanism of sentencing enhancement to promote its trafficking allegation.

**MS. WOOLRIDGE:** ... And quite frankly, Your Honor, the other thing I think we have to note is that there were several references throughout not the trial but the case and the investigation itself to trafficking firearms to Mexico. Ultimately the defendant was not charged, the government chose not to charge him with that crime, but I do think that there is sufficient evidence that all of these firearms were -- at least a good number of these firearms were trafficked. The two that were recovered were recovered in Mexico.

**THE COURT:** Well, I don't think I can rely on that, can I? Aren't I relying on the evidence that was presented at trial? Isn't that what the parties agreed?

**MS. WOOLRIDGE:** That is true, Your Honor, and I apologize. I --

**THE COURT:** I just want to be clear for the record. So it would be my intention not to consider any of the connections with Mexico or any -- the suggestion of trafficking is that the guns were going to be used in illegal activity. That wasn't really addressed at trial either, so I

won't take those two things into account and determine if there is evidence to support them or not.

The government now seeks to have this court find that the trafficking enhancement is applicable at sentencing. The government again, tactically choose not to go forward with that charge at trial, whereby the jury would have to apply a reasonable doubt standard. Instead, the government, in the sentencing phase, trots out the trafficking argument again. The argument still holds no water. First, there was no evidence at trial produced regarding trafficking. Secondly, the arguments advanced at the sentencing phase make no sense given the back-and-forth lifestyle that Mr. Delgado had at the time of this case up to the present. It should be noted that while the government has espoused that Mr. Delgado's mother denied that he lived at her house, she never said anything of the kind. A listen to the recording of her interview with the police indicates she told them, in Spanish, that he comes and goes. That is precisely how he lived! Part of the week he spent in Arizona the longer weekends he spent with his wife and child in Mexico.

Essentially, one could say that virtually anything that Mr. Delgado did; going to the food store; gassing up his vehicle; picking up his mail, all were done on or around dates he traveled to and from Mexico. It would be a different argument if, for instance, Mr. Delgado traveled infrequently to that country and purchases of weapons occurred around those times. There is no evidence to suggest that the government's list of border crossings and weapon purchases are in any way related to each other.

If Mr. Delgado was in business and coordinating with persons in that country to buy or sell guns to go to Mexico an investigation could have been conducted involving an examination of his phone call records. It does not appear that a search warrant was applied for to enable ATF to examine the outgoing and incoming calls to Mr. Delgado's phone. Rather, a list of border crossings with vehicles listed that Mr. Delgado does not even drive was presented to the probation department to convince them that a trafficking enhancement was warranted. Even the United States Probation Department, another law

enforcement agency, did not see that the prosecution was convincing in the argument that Mr. Delgado's travel evidenced he was involved in trafficking, in light of his travel to visit his family.

**NUMBER OF FIREARMS**

According to the testimony of Agent Stacy Cunningham, the investigation began when she received information concerning the sale of two Barrett .50 caliber firearms to Mr. Delgado. The Agent testified she felt that was a red flag and that was the reason she started investigating the defendant and firearms.

In this case, Mr. Delgado believes that the number of weapons that should be attributed to him that have been proven by any standard of proof is three (3). The indictment did not mention the number of guns that were alleged to be sold without a federal firearm license (FFL).

Although the government did not have to prove an actual sale of a firearm for a conviction in this case, the issue of the number of guns attributed to that finding of guilt makes the number of guns relevant due to the 2K2.1(b)(1) enhancements.

The government is seeking an enhancement for more than 25 guns and the presentence report is recommending an enhancement for more than 8 guns. The order of forfeiture was based on this court's finding that by a preponderance of evidence there were 9 seized firearms and 16 firearms (a total of 24 firearms), "transferred or sold to, or deposited with a third party, or placed beyond the jurisdiction of the court". As such, there is a vast disagreement concerning the number of firearms that have been proven attributable to the defendant. What was introduced in evidence, however, was the defendant's statement admitting to the sale of three (3) guns, two (2) Barrett and one (1) FN). Given that actual evidence at trial, the 2-point enhancer would therefore be appropriate to apply since both the government and the probation department calculations are based solely on speculation. The fact that they cannot agree underscores that the number of weapons to be attributed to Mr. Delgado is less that clear cut and makes it more important to apply the enhancement admitted to by the defendant in his recorded statement.

The government would like this court to apply the enhancer of 25 or more guns, based upon speculation that guns that were not present were sold. At best, the evidence that the government testified to concerning the number of weapons that they believed purchased by the defendant assisted in helping the jury conclude that the defendant was not merely a hobbyist or enthusiast. The presentence report, is correct in concluding in the SPECIFIC OFFENSE CHARACTERISTICS section, #33, that no nexus between the firearms alleged by the government and the defendant engaging in dealing them has been shown.

It is suggested that the probation department's calculated enhancer of between 8-24 guns, in Section 22 (page 7) should also be rejected. Notwithstanding the forfeiture finding, there wasn't proof that the guns defendant physically possessed or were on order were purchased unlawfully.

The prosecutor, in her response to defendant's objections, (document 170) states that the jury, by virtue of its verdict, found "the defendant was engaged in the repeated purchase and sale of firearms beyond occasional sales, as required by his statute of conviction." The jury, however, did not decide the number of firearms that were purchased and sold. The jury was not asked to determine that. The prosecutor has no way of knowing that the jury did not convict based upon the defendant's admission of selling 3 weapons.

The government, and the probation department who prepared the PSR, have two different interpretations of what enhancement should apply. The defendant has a third. The government is an advocate for its side finding the maximum amount of enhancement. The probation department, in contrast, found that the government's alleged number of weapons, more than 25, was not proven. The court found, by a preponderance of evidence in the forfeiture proceeding, 24 guns to be attributable to the defendant's conviction. Clearly, the government's continued insistence that more guns are attributable to the defendant cannot prevail considering how the evidence is viewed by the court, the probation department as well as the defendant. The government cannot

meet its burden of proof to establish tha Mr. Delgado should be punished for more than 25 firearms.

The maximum sentence for violation of this statute is 5 years or 60 months, no matter the criminal history category in which you fall. Mr. Delgado is a first offender. Mr. Delgado has abided by all the terms of his pretrial release. Mr. Delgado is a young man who came to this country as a boy and became a citizen. He graduated from a local high school in Tucson. His grades show that he struggled as a student, but still had the fortitude to graduate.

The jury has spoken in this case and found him guilty of selling firearms without a federal firearms license. There was no interrogatory for them to find, at trial beyond a reasonable doubt, the amount of guns that he sold. The government tactically chose to have that matter decided by the court at sentencing.

Mr. Delgado's love for and enjoyment of acquiring guns was the catalyst for the events that led to his arrest in this case. His overly simplistic belief that he did not fall into the category of an individual who would need to obtain a firearms license from the federal government was found to be wrong. Clearly, the conviction in this case will forever preclude him from being anywhere near a firearm.

It is unlikely that Mr. Delgado will find himself in the situation of breaking the law again. There is nothing in Mr. Delgado's background such as drug use or gambling addiction that would suggest he would be predisposed to committing another felony. He has performed well on pretrial release, a reliable predictor of the likelihood to be a successful probationer.

Therefore, it is shocking to see the government suggest that he deserves to be sentenced to the maximum sentence available for this conviction.

It is further advanced that an articulable and reasonable interpretation of the facts as presented in the trial, that the defendant sold three weapons and the weapons in his home were possessed for his own use, the rule of lenity would require that the penalties be resolved in favor of the defendant since to do so, would not be contrary to legislative intent in creating the enhancers found in 2K2.1(b).

**TREATMENT DISPARITY**

    An individual was charged similarly to MR. Delgado and recently sentenced for violations of the same statute. This is the second case the undersigned is personally aware of that ATF gave warnings to persons suspected of federal firearms licensing violations. In *United States of America vs. Nitka*, 4:19-cr-00262-TUC-JCH-EJM, Mr. Nitka, was warned by ATF in 2012 that they believed his activities with guns was more than a hobby and that he would need to stop or apply for a federal firearm dealer's license. He was presented with a warning letter by ATF. Mr. Nitka ignored that advice and, according to pleadings filed, for six additional years engaged in purchasing and selling firearms until ATF arrested him and charged him with unlicensed sale of firearms. Additionally, Mr. Nitka, according to the prosecution, sold more than 100 guns, one which was used in a violent offense in Mexico. To make matters worse, Mr. Nitka was also caught transporting weapons in his vehicle while on release to Pretrial Services. At that time, he was taken into custody. Mr. Nitka, a level I offender, received an 18-month sentence.

    In the second case the undersigned represented a young man, "SC". He had been contacted by Special ATF Agent Matt Manoogian and chastised about gun sales he had made in "Craig's List" type forums. The agent, after speaking with the undersigned and AUSA Woolridge, sent a warning letter to that individual.

    Mr. Delgado was never given any warning by ATF that his conduct was suspected to be, or was, less than lawful. He was just arrested and charged. Mr. Delgado was treated differently. Given Mr. Delgado's performance on pretrial supervision, it is strongly suggested that such a warning would have caused Mr. Delgado to cease acquiring firearms.

    Unlike Mr. Nitka, Mr. Delgado has conducted himself perfectly while on pretrial release, exhibiting that he will be successful on either probation or community release.

    We would further ask this court to consider the sentence in United States v. Gill. Case 4:18-cr-01589-RCC-LCK. That case involved a Tucson DEA Agent engaging in firearms dealing without a license. The government requested a sentence of 18 months. The agent received a supervised release for a year. Gill purchased over 645 firearms.

The defendant is placed on probation for a term of sixty (60) months, with the first six months of the term of probation as home detention, at the discretion of the probation officer, along with a $15,000 fine to be paid in installments.

It is respectfully urged that this court consider a sentence of probation including house arrest in this case or in any case no more than one year and a day in custody. While the government has made effort to characterize Mr. Delgado as a serious criminal, the evidence shows otherwise. This is a young man who has been a citizen of this country for most of his life and has been educated here. He has helped his father in his computer business and has developed his own company based on the skills he acquired from him. While it is true that he maintains and enjoys cultural affiliation with Mexico, he is an American, first and foremost. While he has been found guilty of the charge of Engaging in the Business of Dealing Firearms without a License, that is his first offense ever. A lengthy prison sentence would be contrary to USSG 3553(a) in that it would be a sentence greater than necessary to punish this defendant and to promote deterrence.

RESPECTFULLY SUBMITTED this 23rd day of May 2022.

CATRILLO LAW FIRM

*s/Barbara Tapper Catrillo*
Barbara Tapper Catrillo
Attorney for Isaias Delgado

Copies electronically distributed to all parties.