GARY M. RESTAINO
United States Attorney
District of Arizona
ANGELA WOOLRIDGE
Assistant U.S. Attorney
Arizona State Bar No. 022079
405 W. Congress St., Suite 4800
Tucson, AZ 85701-5040
Telephone: (520) 620-7300
Email: Angela.Woolridge@usdoj.gov
Attorneys for Plaintiff

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| United States of America, | |
|---|---|
| Plaintiff, | CR 19-1094-TUC-JGZ (JR) |
| vs. | GOVERNMENT'S SENTENCING MEMORANDUM |
| Isaias Delgado, | |
| Defendant. | |

Plaintiff, United States of America, by and through its attorneys undersigned, hereby files its Sentencing Memorandum for Defendant Isaias Delgado in the above-referenced case. Sentencing is currently set for June 3, 2022.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    FACTS AND PROCEDURAL HISTORY**

Between December 17, 2018, and April 4, 2019, in and around Tucson, the defendant, Isaias Delgado (hereinafter "the defendant"), repeatedly purchased and resold firearms for the purpose and principal objection of making a profit.  During this time period, the defendant spent over $80,000 on at least 39 firearms.  Included in the defendant's firearm purchases were numerous high-value, large caliber firearms such as multiple Barrett .50 caliber BMG rifles, FNH 249 belt-fed rifles, .50 caliber Beowulf firearms, AR-15/M4 type rifles and pistols, AK-47 type rifles, and numerous 9mm and .40 caliber handguns.  In the two-week period between March 14 and 27, 2019, alone, the defendant purchased eleven firearms for a total purchase price of approximately $48,500.

A review of the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF) Federal Licensing System records confirmed that the defendant has never possessed a license to engage in the business of dealing firearms. When interviewed by ATF Special Agents, the defendant admitted he did not have a license to deal firearms, and had been thinking of getting one but never did so. The defendant also admitted to profiting from several of his firearm sales.

Additional investigation into the defendant's financial records revealed that his income did not support the amount of money he was spending on firearms. For instance, his adjusted gross income for 2018 was reported as approximately $31,000 – far less than the amount he spent on firearms in two weeks in March 2019 alone. In fact, the total amount the defendant spent on firearms between December 2018 and April 2019 exceeded his adjusted gross income for the preceding three years (2016, 2017, and 2018) combined. The defendant's bank account records also revealed a significant correlation between the dates and amounts of the defendant's firearm purchases and his cash deposits, and indicated he did in fact profit from his repeated firearm sales. A search of Internal Revenue Service records revealed that, prior to being charged in this case, the defendant had never filed income taxes.

In connection with the defendant's firearms purchases, he acquired a number of firearms from federally licensed firearms dealers in Tucson and provided a false address in the required paperwork for these purchases. Specifically, on March 20, 2019, the defendant purchased a Smith & Wesson model SD40 .40 S&W caliber pistol from N&N Firearms and stated in the Form 4473 (the documentation required by federal law to be completed in connection with every firearm purchase from a licensed dealer) for the purchase that his current residence address was 1554 E. Melridge St., Tucson, AZ 85706. On March 28, 2019, the defendant purchased a Diamondback model DB-15 5.56 NATO caliber rifle from SnG Tactical and provided the same address on the Form 4473 for this purchase. On April 4, 2019, the defendant purchased two Barrett model M82A1 .50 BMG

caliber rifles, two FN model M249S .223/5.56mm caliber rifles, and one Browning model M1919 7.62 caliber rifle from N&N Firearms and again provided the same address on the Form 4473 for this purchase.

The investigation revealed that the defendant did not live at 1554 E. Melridge Street. His mother, who did live at the address, stated that the defendant did not reside at the home and never had lived there. She believed the defendant lived in Mexico with his wife and child, and stated he only stayed in the garage occasionally for one night at a time. She stated that the defendant did not keep his belongings in her home, and a search of the home confirmed this. The defendant's sister, who lived at 1554 E. Melridge Street as well, also stated that the defendant did not live at the home, did not keep any belongings there, and only occasionally stayed in the garage just as any visitor to the home would. The next-door neighbor, who was familiar with the defendant's mother and sister, said he had never seen the defendant at 1554 E. Melridge Street.

An Indictment was filed on April 24, 2019, charging the defendant with one count of Engaging in the Business of Dealing Firearms Without a License (Count One) and three counts of Making False Statements in Records of Federal Firearms Licensees (Counts Two, Three, and Four). A jury trial for Count One began on August 9, 2021, and the government dismissed Counts Two through Four. On August 12, 2021, the jury found the defendant guilty of Count One, Engaging in the Business of Dealing Firearms Without a License. On August 13, 2021, following a forfeiture hearing, this Court ordered the forfeiture of 25 firearms involved in the defendant's offense of conviction and for which the government had previously provided notice of its intent to pursue judicial forfeiture in the Indictment and Bill of Particulars. Sentencing is currently scheduled for June 3, 2022.

## II.     APPLICABLE GUIDELINE CALCULATIONS

The government submits that the defendant's base offense is 12 pursuant to U.S.S.G. §2K2.1(a)(7). Six levels are added pursuant §2K2.1(b)(1)(C) for an offense involving between 25 and 99 firearms, four levels are added pursuant to §2K2.1(b)(5) for

trafficking of firearms, and four levels are added pursuant to §2K2.1(b)(6) for either (A) transportation of firearms out of the United States, or (B) connection with another felony offense. (The government submits that the enhancement is applicable here under both provisions.) Two additional levels are added pursuant to §3C1.1 for obstruction of justice, for a total offense level of 28. Together with the defendant's Criminal History Category of I, the advisory sentencing guideline range is 78 to 97 months imprisonment. However, the statutory maximum sentence of incarceration for a violation of 18 U.S.C. §922(a)(1)(A) is 5 years (60 months).

### III.    GOVERNMENT'S SENTENCING RECOMMENDATION

The government requests that this Court sentence the defendant to 60 months imprisonment, which appropriately reflects the severity of the offenses and the individual characteristics of the defendant.

The defendant's offense in this case is very serious. He unlawfully acquired and sold firearms repeatedly over the course of several months. The defendant's crime involved at least 39 firearms – each a deadly weapon capable of causing an unlimited amount of harm to others. In fact, at least two of the firearms were recovered in Mexico, where they are not only unlawful to possess, but were also found in connection with additional crimes. The correlation between the defendant's border crossing records, financial records, and firearm purchases indicates he trafficked most or all of the firearms into Mexico, and the potential devastation that has been, is being, and will be caused by each of these as-yet unrecovered firearms – as a direct result of the defendant's crime – is beyond measure. Of note, all of the firearms the defendant bought and sold are considered "weapons of choice" preferred and sought after by criminal organizations in Mexico.

A number of additional aggravating circumstances exist in this case. The defendant went to great lengths to prevent discovery of his firearm trafficking crime, such as renting a storage locker for use in his offense, removing identifying information from the cases of firearms he bought and sold, and providing an address where he did not reside in

4

connection with the firearm purchases. This conduct is troubling for two reasons; first, it shows that the defendant was well aware of the unlawfulness of his conduct and well as the unlawfulness of the ultimate destination and purpose of the firearms. Second, it indicates that the full extent of the defendant's criminal conduct – including the total number of firearms he placed into the hands of a transnational criminal organization – remains unknown.

While every firearm is a deadly weapon with the capacity to cause an immense amount of harm, the firearms the defendant illegally trafficked are particularly alarming. The defendant bought and sold numerous .50 caliber rifles (a devastatingly high-caliber weapon), 7.62x39mm caliber (AK-47 variant) rifles, 5.56 caliber (AR-15 variant) rifles, belt-fed rifles (capable of rapid repeated fire from belts of linked ammunition), and multi-caliber AR-15 variant firearms (capable of conversion to various calibers, including .50 and 5.56). The government submits that the specific types of the firearms involved in the defendant's offense weigh significantly in aggravation.

Also weighing heavily in aggravation are the several acts of deception by defendant in attempt to avoid conviction in this case. Although the defendant had never previously filed income taxes, approximately one week after having been indicted in this case, he filed late tax returns for 2016, 2017, and 2018, claiming net income of $44,415, $61,130, and $66,937, respectively. Then while this case was pending trial, the defendant filed his 2019 tax return in which he claimed $200,256 in gross income – approximately three times the amount of income he claimed the previous year, and almost twice the total he claimed in the previous three years combined. The defendant filed his 2019 tax return while pending trial in attempt to explain the large amounts of cash withdrawals and deposits in his bank account that correspond to the dates of his firearm purchases and sales. The defendant introduced this tax return at trial and argued that these monetary transactions were related to the defendant's internet business rather than his repeated purchase and sales of firearms. However, although he claimed $200,256 in gross income in his 2019 tax return, he only

provided documentation of $34,517.77 in income, and his two witnesses at trial could only account for a small fraction of the income the defendant claimed in his 2019 tax return. Of note, the defendant did not make any payments toward his taxes owed for his 2016, 2017, 2018, or (highly inflated) 2019 returns.

The defendant also made several materially false statements to the agents during their investigation in this matter. He claimed that an employee of one of the licensed firearms dealers at which he repeatedly purchased firearms had advised him his conduct of buying and selling firearms was lawful. However, the employee testified that he had never advised the defendant that his conduct was lawful, but to the contrary had offered for a small fee to conduct the defendant's firearm sales on his behalf, thereby bringing the sales in compliance with federal law. The defendant declined the employee's offer and did not bring his subsequent firearm sales within the legal requirements. The employee's testimony is also noteworthy because, like the defendant's attempts to conceal his firearm dealing, it shows the defendant was well aware of the unlawfulness of his conduct.

The defendant also claimed that he was a gun enthusiast, regularly went shooting at a local rifle club, and had shot the .50 caliber rifles he purchased at this club. However, the defendant had only been shooting at the club once and that the specific range he used on this one occasion did not permit .50 caliber firearms. And finally the defendant claimed that he sold one of his firearms because it was jamming and was subject to a recall. However, this particular firearm was never subject to recall, and the only recall for that type of firearm was unrelated a jamming issue. The fact that the defendant had several false stories prepared when interviewed by agents reveals he put a great deal of thought and effort in concealing his crime.

The defendant committed his serious weapons crime out of greed, putting countless lives in danger to make large sums of money. The defendant has income and assets – in fact, the Probation Department recommends a fine of $15,000 as part of the Court's sentence – and was not motivated to engage in his unlawful conduct out of necessity.

Additionally, the defendant's ongoing and repetitive conduct, his apparent fascination with firearms, and the significant profit he realized from his crime all suggest he would have continued this conduct if not detected by law enforcement. In fact, when arrested he was in the process of obtaining several more firearms he intended to traffic, and had additional pending firearm orders awaiting delivery. The defendant's extensive efforts to conceal his illegal firearm dealing, as discussed, further reveal his intent to continue his profitable crime.

The defendant's Criminal History Category of I is reflected in his guideline calculations, and therefore his lack of prior convictions does not support a departure from the guideline range. Additionally, his criminal conduct in this matter was extensive and ongoing over a significant period of time, and cannot be considered aberrant conduct. The government submits that no mitigating factors exist in this case.

The government agrees with the Probation Department that a fine is appropriate in this case, in light of the defendant's assets and the profits he realized from his crime. The government respectfully requests that, in addition to a term of 60 months imprisonment, the Court impose a fine of at least the $15,000 as recommended. The government also believes that a term of 36 months of supervised release is appropriate. Because the defendant has not accepted responsibility for his crime, the government submits that a lengthy period of supervision may be necessary to protect the public from future criminal conduct.

## IV.    CONCLUSION

For the reasons discussed, the government respectfully requests that this Court sentence the defendant to 60 months imprisonment, a fine of at least $15,000, and a term of 36 months of supervised release. The government submits that this sentence is appropriate and no greater than necessary based on the facts and circumstances of the offenses and the individual characteristics of the defendant.

Respectfully submitted this 26th day of May, 2022.

GARY M. RESTAINO
United States Attorney
District of Arizona

*s/ Angela W. Woolridge*

ANGELA W. WOOLRIDGE
Assistant U.S. Attorney

Copy of the foregoing served
electronically or by other means
this 26th day of May, 2022, to:

Barbara Catrillo, Esq.
Attorney for Defendant Isaias Delgado