**Catrillo Law Firm**
B. T. Catrillo
1320 n. Bryant Ave.
Tucson, Arizona 85712
Tel: (520) 904-3759
SB# 016419, PC# 65136
barbra.catrillo@gmail.com
Attorney for the Defendant

# IN THE UNITED STATES DISTRICT COURT
# IN THE DISTRICT OF ARIZONA

| | |
|---|---|
| **The United States of America,**<br>        Plaintiff,<br><br>vs.<br><br>**Isaias Delgado**<br>        Defendant. | Case No**:** 4:19-cr-01094-JGZ<br><br><br>**Post Hearing Memorandum** |

COMES NOW, The Defendant, Isaias Delgado, by and through counsel undersigned, with the following post-hearing memorandum regarding the government's failure to meet its burden of proving enhancements, by a preponderance of evidence, that Mr. Delgado trafficked weapons to Mexico, and willfully made false statements to ATF agents which were significant enough to obstruct justice.

1.  The government has failed to show, by a preponderance of the evidence, that Mr. Delgado was engaged in trafficking weapons into Mexico. The totality of the evidence that the government relied upon was highly speculative and, when viewed in the context of a man who primarily lives in Arizona and regularly visits his wife and child in Mexico, was no evidence at all. The government could not produce any direct evidence, such as

conversations with out-of-country arms purchasers or any surveillance of Mr.
Delgado loading up a vehicle with weapons and heading to the border. There
were no photographs of meetings between Mr. Delgado and purported arms
buyers. If the government truly believed that trafficking to Mexico was taking
place, the investigation should have found that evidence. Text conversations
would more than likely have been in the Mr. Delgado's phones seized, if
trafficking was taking place. The agents testified that they were performing
spot checks on Mr. Delgado's home on Melridge Street in Tucson pver a
period of days prior to his arrest. If they truly believed that trafficking was
taking place they would have and should have expanded their surveillance to
observe him loading his vehicle with weapons and heading to the border.
None of that occurred. Even the so-called surveillance video that the
government's witness testified was found on Mr. Delgado's cellular phone
(*see June 3, 2022 Transcript pg. 64  lines 15-25 through pg. 67 lines 1-4*)
was shown to be nothing more than what was obviously a music video. That
music video was played in court at the August 4, 2022 hearing. Exhibit 61.

2. Mr. Delgado did not make a false statement with regard to his primary
residence in the United States. The claim that he did so was withdrawn when
it was a Count in the Indictment, just prior to trial. The claim was resuscitated
as an enhancement for the sentencing portion of this case. Again, that claim
was withdrawn just prior to the August 4, 2022 evidentiary hearing.

3. The Defendant did not provide a materially false statement to law enforcement
regarding taxes, or what was told to him by witness Roman Noble or regarding

the recall of the Herstal FN that significantly obstructed or impeded the official
investigation or prosecution of the official investigation.

a) The government claims that the defendant's 2019 tax return was fraudulent in that
he claimed $200,256 in gross income. At the trial there was no forensic accountant
to testify on behalf of the government regarding the fraud in the preparation of the
tax document. Mr. Delgado produced two businessmen as witnesses, Mr. Rocky
Nealy from "Peoples Health Care Connection" and Mr. Miguel Herrera from "Mom
and Dad's Place", who collectively accounted for a quarter of his 2019 income. Both
witnesses testified to having a long-standing professional relationship with Mr.
Delgado that began when he was a youngster, working in the computer business
alongside his father. Mr. Nealy testified to paying Mr. Delgado $34,517.77 in 2019.
Mr. Herrera testified he paid, at a minimum, between $15,000-$16,000 for both
2018 and 2019. Mr. Delgado told pretrial services he "earns anywhere from $2,000
to $20,000 per month as a computer programmer. Mr. Delgado relates he has
many more clients than Mr. Nealy and Mr. Herrera. Interestingly, the probation
department feels he is financially able to pay a $15,000 fine, notwithstanding a
recommending a 21-month sentence which would close his business for almost two
(2) years. The government's suspicion that the defendant's tax returns are
fraudulent does not meet the burden of proof by a preponderance of the evidence
that the documents contain untrue information.

b) The government submits that statements made to Agents during his arrest
significantly obstructed or impeded the investigation in this case. The government
called Mr. Roman Noble to refute a statement that Mr. Delgado made to the agents
concerning why he believed that firearms transfers he made were lawful.

Mr. Noble was a gun dealer who sold Mr. Delgado firearms. Mr. Noble was contacted by ATF prior to Mr. Delgado being arrested and asked to let them know when Mr. Delgado was coming into the store. Trial T. p.123 lines 21-24**.** Mr. Delgado claimed that Mr. Noble, who he believed had expertise in laws regarding selling firearms, told him he was going about his sales lawfully. At trial, Mr. Noble testified otherwise, indicting he offered Delgado a service wherein he would consign weapons for a small fee. While their statements differ, there is no reason why Mr. Noble's version should be believed over Mr. Delgado's version of the facts since Mr. Noble testified untruthfully at the trial. Mr. Noble was more than willing to agree with an incorrect question from the prosecutor regarding why his business closed. Mr. Noble testified at the 2021 trial that he worked for his father for five (5) years from "probably 2014 to 2019". Trial T. p.113 line 14**.** The prosecutor than asked, "…so were you essentially working at the business pretty much until the COVID pandemic kind of shut things down?" Mr. Noble testified, "Yes". Trial T. p.113  lines15-21**.** That, of course, cannot be a truthful answer. While his business may have shut down in 2019 it was not due to Covid. The Covid Pandemic was not shutting down businesses to the public until March and April of 2020. While it would not be concerning if Mr. Noble was incorrect in the year his business shut down, it is concerning that had to know that his business did not shut down because of COVID. If Mr. Noble was that willing to answer a prosecutorial question posing an incorrect premise with the answer, "yes", it is asserted that his trial testimony should be given little weight by this court  when considering if Mr. Delgado's statement to the agents was false.

c) The government claims that the Herstal FN firearm was not subject to recall. At the August 4, 2022, hearing the defense clearly showed that both FN and gun related

periodicals were informing the public that the weapons were subject to recall. Mr. Delgado is not a firearm professional like the agents. Mr. Delgado's gun was jamming. The gun was subject to recall. It is of no moment if the recall was for jamming or not jamming. Whether Mr. Delgado assumed the recall was for jamming or not does not rise to being a materially false statement that is significant enough to obstruct justice. A simple reading of Trial Exhibit 67 makes it clear that Delgado told Agent Bort that his FN was jamming. When asked why his gun was jamming he told Agent Bolt, "How should I know, I'm not a gunsmith." He also knew the weapon was subject to recall. He never once told agent Bort that the FN recall was due to the weapon having jamming issues. He just knew that his weapon was jamming and was also in the group subject to recall. He seemingly agreed with Agent Bort's position that the weapon was not recalled for jamming issues. Trial Exhibit Delgado Transcript, p. 17  line 11 to end of page.

CONCLUSION:

For the foregoing reasons it is respectfully urged that this Court find that the Government has failed to meet its burden in proving the above enhancements.

RESPECTFULLY SUBMITTED, this 16th day of August 2022.


CATRILLO LAW FIRM

By: /S/ Barbara T. Catrillo
Barbara T. Catrillo
Attorney for the Plaintiff


**CERTIFICATE OF SERVICE**

I hereby certify that on the date stated above, a copy of the foregoing has been transmitted electronically to the CM/ECF filing system for filing and transmittal along with copies transmitted to the following parties via the CM/ECF system